Case number 25-5917, Jenna Amacher v. City of Tullahoma, TN et al. Oral argument, 15 minutes for the appellant, 15 minutes to be shared by appellees. Mr. Justice, for the appellant. Good morning, your honors. Drew Justice for the plaintiff, Jenna Amacher. I'll reserve three minutes. In this case, the court wrongly granted summary judgment on what should have been a jury question on the First Amendment. It did so seemingly by ignoring certain items of evidence that were favorable to the plaintiff and by basically accepting the defendant's spin on certain other items of evidence. Accepting a spin in ways to where I just contend a reasonable jury would have had the liberty to find otherwise and to reject the spin. Don't you have a little cognitive dissonance about the idea that an elected official can sue citizens who are unhappy with the elected official and think the elected official can't hold the office? I mean, it just seems to turn everything upside down in this country. That the citizens somehow are restricted on having political reasons for getting an elected official not to hold the office because they don't live there. I mean, it just seems funny to me. It just seems so backward to me that the elected official can sue unhappy citizens and use 1983 to boot. That's just a really wild concept to me. I do understand that concern, Your Honor. However, under Dennis v. Sparks, you are allowed to sue a private party for conspiring with a judicial official. In that case, it was a judge. In that case, the plaintiff was an elected official? No, Your Honor. That's my thing. I mean, when you take public positions, you're serving the public and the public is allowed to be unhappy. They complain about judges. They complain about elected officials. I mean, that's just one of the things that goes with the job. It's really quite unusual to call that First Amendment retaliation. I would call it very much retaliation. They don't like it. They don't like what the official is doing. This is just so American. Well, I mean, the problem comes in when you conspire with a government prosecutor to initiate a retaliatory, irregular, bad-faith prosecution. I mean, they're allowed to speak out against her. They're allowed to – And you would call it – no, sorry. Go ahead. Yeah, why is it irregular and bad-faith? I mean, the court here said it was just enough to get across the line, the defense. So she didn't own the property in the city. She sold the property in the city. She moves out. She's got some – the whole question is intent to return, which is a notoriously difficult fact-based question. But why is this in bad faith? Not by laws, but by a hair. Well, I don't ultimately agree that it was by a hair. I do recognize the judge used that language in his order. But the facts were basically undisputed the whole time that she was building in the city. Under the Tennessee statutes, physically – your physical absence from the territory by itself is legally meaningless. There has to be an intent to leave. In this case, for example, the city administrator, she admitted that after they confronted Ms. Amacher in February 2022, Ms. Amacher cited the statutes to them. She then talked with her other opponents of Ms. Amacher, and she said it was confusing because of the case law. She didn't say it was confusing because of the statutes, but it was confusing. Basically, she seemed to acknowledge that she knew she didn't have a claim under state law. And she did venture that, well, maybe Tullahoma law, the Tullahoma Charter may be somehow different. But she didn't explain why it would be different, and there just wasn't any reason for it to be different. Would you call the claim frivolous, and is that the right standard? We basically would call it frivolous, yes, Your Honor. And is that the right standard? I mean, if somebody could be sanctioned in federal court for – or state court for the equivalent of a Rule 11 violation, then that's when you can bring this kind of lawsuit. But if you're bringing the lawsuit, you have some sort of good faith basis, you lose. That would not be – I know under the standard for state law malicious prosecution that the standard is just whether you have probable cause to bring it. Okay. So I think a way of answering your question is would that work here in a civil setting? Would that work under the First Amendment? So in other words, by saying it works, you're still allowed to say there wasn't probable cause. In fact, that's how you started your argument, by saying this was frivolous. But are you okay with using that standard in civil cases? I think my answer would be if you look at Nieves versus – I forget the other part of that case. But under Nieves, you don't have to prove that the charge was frivolous necessarily, but it definitely helps. If you can show that it was somehow irregular, that it wouldn't normally have been prosecuted absent the speech and that the speech was – there's a prosecutor who's an intermediary between the plaintiff and the defendant and the prosecutor's actions in filing suit. Here, as I understand the law, quo warranto cannot be pursued unless the prosecutor okays it. And so it seems to me that it should be more of an absolute prohibition if there is probable cause to the suit, meaning that it's not like Nieves because there's no narrow exception in certain circumstances. And it should be just – you have to show the absence of probable cause. You might point between the analogy because there's a prosecutor and an intermediary in both cases. I think what I'm saying is, strictly speaking, in a First Amendment claim, you don't always have to show probable cause. But an absence of probable cause is – So if you were suing over a failed criminal prosecution, as I understand Hartman, it says you have to show the lack of probable cause. And it ties it to causation and it says because there's an intermediary in the person who pursued the criminal prosecution. It just seems to me that that maps on naturally to this quo warranto action. And just to finish the point, if there is probable cause, it just doesn't matter motive. It doesn't matter if they hated the person. All of that is irrelevant because the probable cause pierces all of that. And I think that's true. And here – I mean here our main – here the absence of probable cause is sort of the thrust of our argument. And so it's all sort of a little bit theoretical. Okay. Well, that's helpful. One thing, just following up on the Judge Murphy question, is it – did he accurately describe how quo warranto works under Tennessee law? Do you actually have to have the DA's approval or can citizens themselves – because that's ultimately how this ended up. It was ultimately a citizen action. Is it accurate to say that you can't file it without the approval of the DA? Is that true? My understanding is it's not true that you're supposed to ask the DA's approval, and if he gives it, good. If he doesn't, then you can file it apart from him. Anyway. Yes, Your Honor. I thought there were some Tennessee cases that say, though, he can intervene and move to dismiss. I have not – I'm not aware of those, Your Honor. And so in terms of the retaliatory motive, we just contend that the absence of probable cause is relevant. The fact that the DA – or that the city administrator was admitting, in essence, that the case law was against her from the get-go, that she knew that the prosecutor who she wound up using to prosecute Ms. Amacher had a conflict of some kind with Ms. Amacher, that she knew that he had first appointed a special prosecutor from out of town and that that prosecutor had declined to prosecute, saying it sounded political. And so she seemed to know – I just submit, based on all that and based on Ms. Amacher's explanation of her building in town, she knew that she didn't have probable cause. And so that goes to the retaliatory motive. And at least – I'm not necessarily asking Your Honors to be the jury here and to decide whether there was or wasn't probable cause, but ultimately a reasonable juror could find that there wasn't. And then also we just submit that there's a strong pattern that the city and not to mention Van Belser were involved in instigating the prosecution, that it wasn't just some independent thing by the district attorney. Everyone agrees that the city administrator and the mayor, not to mention Van Belser and Woodard, privately met with the DA shortly before he confronted Ms. Amacher and then filed the case. So they specifically met together to discuss basically getting rid of Ms. Amacher. The only disputes, as I understand it, are – there's some dispute over exactly how that meeting went and there's some dispute over – again, we already talked about whether there was a motive to retaliate. What is her theory under state law of having a residence? That she just at some point was going to build a house or is it, hey, I had my tent there and I was using the tent for a week or something? What was her best argument on that? Because it was a very long time that she – you wouldn't have called her living there. Like I don't think she was getting mail there, for example. That is correct. And basically our theory, which she's always articulated and which I think the court basically agreed with, the state court, is that residency is sort of like citizenship. I mean, it's basically the equivalent of domicile. And so you don't lose your citizenship simply by physically moving. You have to have an intent to set up citizenship somewhere else. If you look at the statute 22107B, it specifically talks about this. It says if a voter moves out of such voter's habitation, meaning where she's living, outside the precinct where the person is a registered voter but continues to be a resident of the precinct, that continues to be a citizen or a – What's the best – I think Chief Judge Sutton's question is what's the best evidence of that? Is it the fact that she was like camping allegedly? Was that her theory, she was camping there? Her theory – I mean her basic theory was that she had originally lived and been a resident in Tullahoma. She sold her house, bought property, was in the process of building. She did camp there some, but that wasn't the main thrust of it. The main thrust was just she never intended to leave Tullahoma. And she also worked in Tullahoma. I mean she hadn't broken ground. There wasn't a lot of evidence of construction actually happening. I mean she had some explanations for why that was, which was like there was a tornado and such. But ultimately the statute – Was this a place where you would camp or was this like a suburban lot? Was this like rural, beautiful, you know, bucolic country so you – It's a little bit of a cross between them. Was it a place to camp or was it an unusual place to camp? It's a little bit of a cross between country and suburban lot I would say. But I will just point out before my time is up, the statute 22122 specifically mentions leaving a place for one or more years. And so I just submit that that would stand in her favor as well. Okay, thanks very much. We'll hear from the other side. Good morning. Good morning, Your Honors. My name is McKenna Williams and I, along with Robert Burns who is here with me today, represent the City of Tullahoma, Tennessee, former City Administrator Jennifer Moody and former Mayor Ray Noahs, which we collectively refer to as the Tullahoma defendants. As Mr. Justice said, this case does turn on probable cause. I would submit to you today that the DA established probable cause to file the Quo Warranto action. Ms. Allmacher claims that her speech was – How does – back to Judge Murphy's question. How does this Quo Warranto thing work? Can citizens do it only with the support of the DA or is it there's two tracks or what are the different ways this can happen? It is my understanding that the DA is the one that files a Quo Warranto action. I mean an ouster petition would be a different type of action, but this one particular type, that's my understanding. So there is one citizens can do, but it's not called Quo Warranto? That's my understanding. Now I can do some research and finalize that. I don't know what Quo Warranto means, do you? It means by what right? Excuse me? By what right? That's a question, not an answer. Right. Okay. The question to the court is by what right could she hold her seat as alderman if she is not living within the city limits of Tullahoma? Thank you. Forgive me for my ignorance. Ms. Zahnbacher claims that her speech, although it was extremely controversial and divisive, was the substantial motivating factor, but as Judge Larson said, probable cause pierces that and here. Do you think the test should be a requiring for plaintiffs in the civil context so we should extend Hartman to all civil suits, that if you're challenging a civil suit as improper and in retaliation for your speech, that the plaintiff in a 1983 later suit should have to show the absence of probable cause for that civil suit? Should that be the test? No, I would not say that a civil case requires probable cause, the language of probable cause, and the standard that is used by courts for that. So Hartman said if the suit in the later 1983 suit, so the first suit is a criminal prosecution, Hartman suggests that the plaintiff to succeed in the 1983 suit needs the absence of probable cause, and you're saying we shouldn't extend that categorically to the civil context if the first suit was a civil suit rather than a criminal prosecution? I would say no. Then why should it apply here? Well, I think it applies here because the DA filed this and although it was, I guess you could classify it as a civil suit in the quo warranto situation, she wasn't going to go to jail, right? But it was filed by the district attorney in his capacity as district attorney. So should it be something different than probable cause, like a good faith basis to file the suit, the absence of frivolousness? I mean, I don't know what the equivalent. Plausible claim. Yeah, I mean, Your Honors, I don't have a set line test for you today for cases other than this one here in front of us. We want you to have answers to all the cases, sorry. I know. But I do think that there is absence of frivolousness, the way that we operate currently. Isn't that far too low? Not frivolous? Is that different than Chief Judge Sutton suggests plausible? I don't think so. So just help me out with one other technical point. The case is ultimately with the private citizens. So by the time it's done, is the DA actually still a claimant at that point? Yes. Or they're just brought in to cover the $500 and all that? Right, yes, the latter. I see. So you would say by the end it's really three claimants, the two private citizens and the DA. Is that how you would characterize how it ends up? I would say yes, but I think the DA would be the main, I want to say prosecutor because that's not the right word, but, yes, prosecutor. The main complainant would be the DA. I do think you're right in that the private citizens were a part of it as more of a technicality because the quo warranto does require a relator and the bondholder. There is another action, it just doesn't use Latin, the citizens can do it. Right, yes. And I'm not sure what the intent was or the mindset behind the citizens and the DA and why they filed it in the way that they did. I just know that the petition from the citizens that had over 250 signatures was presented to the DA for him to investigate her residency and then he investigated it with his resources at the district attorney's office. But if they brought it as this ouster action, then we wouldn't be here at all because there'd be no 1983 plausible claim because you need conspiracy with a state official, right? Right. Can I ask, as I read some of these 1983 cases on causation, the first step in determining what the rules should be for 1983 is to look to the comparable common law suit. And so a lot of folks say that it's malicious prosecution is the comparable common law suit for criminal prosecution, therefore that's where the absence of probable cause comes from. But in some of the decisions, they suggest the comparator analogy should be abusive process and not a malicious prosecution. And I guess as a historical matter, abusive process did not require probable cause. So I could see some 1983 suits where that might be the comparator. And as I understand abusive process, it's like you're using a suit validly. So it's not frivolous. There is probable cause. But you're trying to achieve an illicit goal. So it would be like you're trying to extort money out of the defendant through the suit but not to collect. But you'll say, I'll dismiss the suit if you give me this or if you resign or do something. I could see some type of First Amendment claims along these lines. Like if you have a valid basis for pursuing litigation but you're saying I'll end this litigation if you just stop criticizing. So it would be like a First Amendment tied end. It's not obvious to me that probable cause would extend to that suit. And so why would this suit not be like that? Well, I would say that there was an illicit outcome that was being pursued. Ms. Allmacher did not live within the city limits of Tullahoma. She did not sleep in Tullahoma, Tennessee and had not. But I think he's asking a hypothetical. I want to question him. I want to make sure I understand the hypothetical. So the hypothetical is that the claimants say if you stop doing such stupid things at city council meetings or the alderman meetings, we'll dismiss the case. So the case might be valid, but they're not really doing it to achieve the case. They don't want her to resign. What they want her to do is to stop criticizing them. That would be the hypo. Or they want her to vote differently. Yeah. That may not implicate the First Amendment, but yeah. My answer is if it's a cognizable claim, who cares? This is politics, but give your answer. I would also say she's subject to public scrutiny, as you said earlier. She's a publicly elected official. The goal here was not to get her to stop saying the things that she was saying or to have her... The 2040 plan was the economic development plan that she disapproved of. There were other people who disapproved of the 2040 development plan, and it got voted down. So I think in the hypothetical situation, maybe if the goal is... She had a $1.8 billion plan, and everyone was really angry and said if you keep with that plan, here are some of the ways you're going to have to pay for it. And the person gets rid of the $1.8 billion plan. Sounds pretty political to me. Maybe so. I would say that here she... All of that is if and maybe, and if this was the case, I think that if she had not sold her home, then maybe that would be the difference. Here she did not live in Tullahoma, and in that moment when she sold her home, she vacated her position as alderman. But they're right. I actually think the state court got this right. It's an intent thing. It's hazy. She ultimately did start building. There were tornadoes. There was COVID. There was the camping ventures. I don't know. I thought the state court had it exactly right, close call, but she hadn't given up her residency. Right, and maybe so, but that doesn't negate probable cause at the beginning of filing the suit. I think all roads becoming convinced lead to probable cause. I mean, I find you have the situation where the motives are understandably bad. It's political rivals. Imagine the timing. It's exactly the minute this person takes a stand that everyone doesn't care for, so you've got clear causation, clear motive. The only way you get around that, it's very funny to say, well, the motive doesn't count because there was a legitimate reason. It just seems like Hartman solves the problem, but I don't know. I would agree with you, and I believe that something notable here today is Your Honor, she still does not live there today. So intent is still a question. She doesn't hold office either. Right, but intent was the question, and that was the reason for the filing of the petition, and so the court could answer that question. I could also understand. Who wants to live in a place where they voted you out? I mean, seriously. You've got a short life. Find people that like you. Fair enough, fair enough. Thank you, Your Honors. Counsel. Good morning. Good morning. Daniel Hedrick for the private citizens, Scott Van Velser and Jim Woodard, and my colleague Matthew Evans is here with me today as well. Pleasure to be before you. Help us on the quo warranto thing. Was this ultimately, by the time it was done, solely an activity by your clients, or would you say it was an activity with DA and your clients? I'd say the only involvement that our clients ever had was getting private citizens to sign the petition and delivering that to the DA. That's what's in the record. What the pleadings show in the underlying quo warranto action is that originally District Attorney Northcutt is the one who filed the action in his own name. Scott Van Velser and Jim Woodard aren't even mentioned. Aren't they the relators? Didn't they post a bond? They did. So what happened procedurally is after the DA filed the original quo warranto complaint with no reference to the relator assurity, then Jenna Onmacher filed a motion to dismiss. The DA responded by amending the complaint because the tenancy code requires that the suit be brought on relation of a private citizen. So during that amended complaint, then that's the only reason that Jim Woodard and Scott Van Velser are mentioned. There are 270 citizens that signed the complaint. Any one of them could have been brought on as relator. The surety is just there for a $500 bond. What's your view of Tennessee law? So they were brought in. Was the District Attorney still in control of the quo warranto action? Absolutely, yes. The District Attorney is the one who made the probable cause determination, the one who drafted the complaint and filed it, the one who made the arguments and took the depositions. And Jim Woodard and Scott Van Velser were there just for the technical formality that they were required to be relator insurator. They didn't control the suit. They had no determination of whether the suit would be filed. It was the DA. And in fact, that's supported in the record. General Northcutt's declaration, which is in the record, says that he alone made the probable cause determination. He alone made the decision to file the lawsuit. If you look at the only written evidence relating to my clients that they submitted, it's that complaint of misconduct. And it's just a letter signed by the citizens, and I just want to quote from it just to emphasize something here. The letter to DA Northcutt said, it is respectfully requested that the Office of District Attorney forthwith investigate this complaint and if reasonable cause is found for such complaint, to institute proceedings to oust Jenna Amarker from the Office of the Alderman of the City of Tullahoma, Tennessee, if probable cause, if reasonable cause is found. And that's exactly what happened. So that's when their involvement ended until Ms. Amarker decided to file a 1983 claim against my clients. Those citizens, as Chief Judge Sutton pointed out, had an absolute right to be angry with, upset, and use their First Amendment rights to vindicate those emotions in the form in which they did in the City of Tullahoma by questioning reasonably whether this particular alderman lived within the city limits. What's the answer to Judge Murphy's question? If they file the suit and it's really sharp elbowed and they say, listen, we'll withdraw it if you change your position on this development plan or whatever the political topic of the day is, doesn't that seem a little different? Well, if those weren't the facts, of course, but if that... Yes, so that hypothetical, you're not giving away the case, but just trying to figure out if probable cause really works in all cases. I think that was the point of his question, that one needs to be careful about adopting Hartman wholesale in the civil setting because maybe there could be misuse. So the question is whether that hypothetical is a misuse setting. Well, I would say it's further nuanced by the fact that you have private citizens. I think the question of whether Hartman should apply broadly has to take into account that, at least with respect to my clients, we're talking about a much broader issue, which is whether 1983 liability should be imposed anyway. Yes, so your first argument is they didn't conspire. Absolutely. But you're fighting the hypothetical. It's citizens alone, I'll make a case however you want it. The point is what they're doing is they really don't care about the lawsuit. What they care about wasn't one of the debates, this development plan? Right. So what they really care about is the development plan, either shooting it down or making it happen. And so they're just looking for litigation that crosses the line of they're not having to pay fees because of sanctionable lawsuits. So they find a way to do that, so it's cognizable, plausible, whatever. But it really is. It's not a bad motive in the sense of we hate you politically. It's a bad motive in the sense that they're using this as leverage to shape the. . . I mean, it's really lawfare. They're using the litigation to change what actually happens on the development plan. Is that a problem? I don't think so, and that wouldn't impose. . . You could have an ethical question about whether it's a problem, but legally that doesn't impose 1983 liability on private citizens. Well, again, just assume they were conspiring and so forth.  Don't take the easy exit ramp. I get the inclination, but I'm trying to figure out. . . We'll say it's the DA. I know that's not your client, but just trying to figure out how this would work. Yeah, I mean, if the facts were as Jenna Armacher said at the original, that they had conspired with the DA in actually taking control of the lawsuit to retaliate against her, that might be a cognizable claim. But that's not what happened in this case. I don't accept the hypothetical, this is what I'm saying, as it applies to this case. I don't think that should expand liability. All right, your red light's on. The timing is good.  Thank you, Your Honor. It'll be great at this point. Your Honor, I did want to comment briefly on this Hartman case. I don't think any of the parties cited it, but I was at least a little bit familiar with it. But one thing they talk about in Hartman is this presumption of regularity where you have sort of a neutral prosecutor get involved and evaluate the probable cause. And in this type of claim where we're alleging that the prosecutor basically should be a defendant but for his immunity and that he's conspired to retaliate for speech, it really doesn't seem like there is a presumption of regularity. And in fact, it's almost undisputed that this prosecutor was not regular, that he had problems with Ms. Amacher. At minimum, a reasonable jury could find as much. The defendant administrator admitted that he had a conflict with her. He admitted that at least for part of it he had a conflict and then supposedly that conflict somehow went away. But I would just submit there was no presumption of regularity. The presumption of regularity is pierced because they were political rivals or the evidence shows the DA didn't like your client? What's the thing that gets around this presumption of regularity? Is it motive? Is that the right word to use? I mean, it's basically his hatred of her, but more than that, it's the fact that he hated her at least partly for her speech. And I know the political rivals. Yeah, her speech is political. Well, I mean, what I'm talking about, the main— I'm not totally sure what all the reasons are for why he hates her, but I know at least part— He hated her because of her sex, her race, maybe her religion. That would be one thing. But she's—you know, they're in a political space and they have differing views, so maybe he hates those views. I don't—that might be part of it, Your Honor, but the only clear evidence on the record for why he hates her is that she had sued him. I did hear Chief Judge Sutton ask about whether suing someone counts as speech in the prior argument, but as far as I understand, it does, and so that's at least the biggest reason and the clearest reason why he hated her. All this stuff about political speech, I think the concern is, setting aside causation, that adverse action is this, quote, warranto action to remove her from office, which suggests your argument is, in effect, that she has a First Amendment right to remain in office, and it's not obvious to me that that's true. In the public employee context, we clearly suggest that high-level public employees who have policymaking roles and then speak on policy are just exempted from First Amendment protections under Garcetti and Pickering, and it's not obvious to me why that would not extend to elected officials who are even higher than the exemption would cover. Your Honor, I would define it not as a right to remain in office so much as just a right to be free from— I mean, this was a lawsuit designed to rack up costs for her into the tens of thousands of dollars and ultimately to try to embarrass her, and that's what they tried to do in the trial. And if I could just close with one quick point, unless there are any further questions. On this issue of probable cause, ultimately I contend the issue shouldn't be whether your Honors decide there was or wasn't probable cause. Ultimately, the question under Rule 56 is whether a reasonable juror could find that there wasn't, and I contend that it could. Thank you very much to all three of you for your helpful briefs and arguments. We appreciate it. The case will be submitted.